IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

UNITED STATES OF AMERICA

v.                                          Criminal Action No. 3:23cr151

SHAMEL MALIK DOVE,
            Defendant.

## OPINION

After state police arrested Shamel Malik Dove, they seized his cell phone incident to arrest and obtained a warrant to search the phone. Federal investigators then used information from that search to obtain a second, federal warrant to search another phone seized from Dove on a later date. Dove moves to suppress all information gathered from these two searches as violative of the Fourth Amendment.

Dove's motion was referred to a United States Magistrate Judge. The magistrate judge doubts that the police sufficiently established probable cause to obtain the first search warrant but nevertheless recommends denying Dove's motion on the basis that the good faith exception to the Fourth Amendment's exclusionary rule applies. Yet, the affidavit in support of the state search warrant draws no connection between Dove's conduct and his phone. Instead, it contains only the affiant's hunch that Dove's phone contained evidence of his crimes. The good faith exception cannot take hold where an affidavit is so lacking in indicia of probable cause and the warrant is so facially deficient. At the same time, federal investigators sufficiently established probable cause to search Dove's second phone on grounds entirely independent from the unconstitutional search of his first phone. Accordingly, the Court will suppress evidence obtained pursuant to the state search warrant, but it will not suppress evidence deriving from the federal one.

# I. BACKGROUND

## A. *Factual Background*

### *1. Dove's Arrest*

On May 8, 2023, Detective James Cameron of the Charlotte Mecklenburg Police Department ("CMPD") obtained a warrant to arrest Dove for possession of a stolen car. (ECF No. 64-2 ¶ 5.) At the time, Cameron knew that Dove was a convicted felon. (*Id.* ¶ 2.) As Cameron was obtaining the warrant, three other CMPD detectives—Detectives Haupt, Hinton, and Wallace—located Dove. (*Id.* ¶ 6.) Wallace saw Dove exit a car from the back right passenger seat. (*Id.*) Three other individuals, one of whom also had an outstanding warrant out for her arrest, likewise exited the car and walked with Dove to a nearby restaurant, where they were seated at a table on an outdoor patio. (*Id.* ¶ 7.)

Once Cameron arrived on the scene, the four detectives attempted to execute the arrest warrants on Dove and the other individual. (*Id.* ¶ 8.) As Cameron handcuffed the female arrestee, Dove began to flee. (*Id.*) Haupt and Hinton chased down Dove, wrestled him to the ground, and placed him in handcuffs. (*Id.*) Hinton and Wallace then searched Dove incident to his arrest. (*Id.* ¶ 9.) During their search, the detectives found a firearm in Dove's pants. (*Id.*) They also recovered a cell phone from Dove's back pocket (the "May 8 phone"). (*Id.*)

Once the detectives secured the scene, Hinton and Wallace walked to the car that Dove and the other individuals had arrived in. (*Id.* ¶ 10.) Wallace saw a single bag of blue bills sitting on the back right passenger seat where Dove had been sitting. (*Id.*) Testing later revealed that the pills contained 98 grams of fentanyl. (*Id.*) Dove was ultimately charged in state court with trafficking opium/opiates, possessing a firearm as a convicted felon, carrying a concealed gun, and resisting arrest. (*Id.* ¶ 11.)

2

## 2. *State Search Warrant*

On May 17, 2023, Detective Cameron applied for a warrant to search the May 8 phone (the "state search warrant"). (*See* ECF No. 64-2.) Cameron requested to search call logs, voicemail messages, text messages, emails, and messaging applications. (*Id.* at 3.) He also sought to search Dove's internet history; the locational data contained in various applications on the phone; and any media files, including pictures, videos, notes, and documents. (*Id.*)

In support of his request, Cameron provided an affidavit that contained all the background information concerning Dove's arrest. *See supra* Section I.A.1. The affidavit did not draw any specific connection between Dove's offenses and the May 8 phone. Instead, Cameron stated in conclusory fashion, "I believe that these cellular telephones were used during the commission of the crime of possession of a firearm by a convicted felon and trafficking opium and may have images, stored data, text messages, and telephone numbers or records related to the commission of the aforementioned crimes."[1] (ECF No. 64-2 ¶ 12.) He also summarily asserted that Dove used the May 8 phone to commit "the criminal offenses under investigation." (*Id.*) From there, Cameron explained how cell phones contain a bevy of programs and information that "can be evidence in a law enforcement investigation," such as pictures, videos, and locational coordinates. (*Id.* ¶ 13.) At no point did Cameron specify the basis for these statements, detail his experience investigating narcotics and firearms offenses, particularize his comments about the information one might find stored on a cell phone generally to the May 8 phone, or explain the connection between cell phone use and drug trafficking or firearms possession. He nevertheless maintained that these statements provided probable cause to search the May 8 phone. (*Id.* ¶¶ 16–17.)

---

[1] Despite referring to multiple cell phones in this section of the affidavit, Cameron requested only to search the May 8 phone in an earlier part of the affidavit. (*Compare* ECF No. 64-2 ¶ 12, *with id.* at 3.)

3

A state magistrate reviewed the affidavit and issued the search warrant. (*See id.* at 1.) Cameron later searched the May 8 phone and found evidence of narcotics and firearms activity.

### 3. *Robbery Investigation and Federal Search Warrant*

On May 19, 2023, United States Postal Inspector Jessica Adams responded to a robbery of a United States Postal Service mail carrier. (ECF No. 64-3 ¶ 7.) Within days, Dove became a suspect in the investigation after he posted a video to his Instagram account showing him driving a car that matched the description of a car seen in a surveillance video before and after the robbery. (*Id.* ¶ 10.) In an apparent effort to aid the federal investigation into Dove, Cameron emailed Adams about the circumstances surrounding Dove's arrest on May 8, 2023. (ECF No. 76, at 11.) He also mentioned that he had discovered evidence about the theft of mail keys and a possible fraud scheme when searching the May 8 phone. (*Id.*)

On June 21, 2023, a federal grand jury indicted Dove in this case on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 1.) These charges arise from Dove's conduct on May 8, 2023. On June 29, 2023, Adams and other officers executed a federal arrest warrant on Dove at an apartment belonging to another individual. (ECF No. 64-3 ¶ 13.) Upon arresting Dove, the officers obtained permission from the apartment's resident to search the premises. (*Id.*) During that search, they found a phone with a smashed screen in a toilet bowl (the "June 29 phone"). (*Id.*)

In a post-arrest interview, Dove waived his *Miranda* rights and told the officers that the June 29 phone belonged to him. (*Id.* ¶ 14.) Dove shared details about a fraud he tried to conduct using checks stolen from the mail. (*Id.*) But he denied committing the robbery, instead explaining

4

that he had purchased the car in the surveillance video from another individual. (*Id.*) Dove told the officers that they could find information about the purchase date of the car and his communications with the seller on the June 29 phone. (*Id.*)

On July 14, 2023, Adams applied for a warrant to search the June 29 phone (the "federal search warrant"). (*See id.* at 14.) The affidavit in support of the warrant detailed the foregoing timeline of events. (*Id.* ¶¶ 7–14.) It also mentioned that Cameron previously obtained a warrant to search the May 8 phone "for further evidence of trafficking opium and [Dove's] involvement with high-end vehicle thefts," and that Cameron subsequently searched the May 8 phone "for evidence of drug trafficking and stolen motor vehicles." (*Id.* ¶ 12.) Based on her "training and experience and the fact that [Dove] used his prior cell phone, seized on May 8, 2023, to communicate with another person about bank fraud," Adams stated her belief that the June 29 phone would "also contain such communications." (*Id.* ¶ 14.) She further posited that, given the facts of the investigation, probable cause existed to believe the June 29 phone contained information relevant to the robbery of the mail carrier. (*Id.* ¶ 15.) A United States Magistrate Judge reviewed Adams's affidavit and issued the requested search warrant. (*Id.* at 1.) Federal investigators then searched the June 29 phone.[2]

### B. Relevant Procedural History

On May 29, 2025, Dove filed a motion to suppress all evidence seized pursuant to the state search warrant and the federal search warrant. Dove asserts that that the state search warrant lacks validity on both probable cause and particularity grounds. He also contends that Cameron's search

---

[2] The record contains minimal information about the evidence obtained from the June 29 phone, and the government has indicated that it does not intend to introduce at trial any evidence obtained pursuant to the federal search warrant. (*See* ECF No. 80, at 4.)

5

exceeded the scope of the improperly obtained warrant and that the good-faith exception to the Fourth Amendment's exclusionary rule cannot absolve the state search warrant's defects.

On July 14, 2025, a United States Magistrate Judge conducted a hearing on Dove's suppression motion, at which Cameron testified about his extensive experience investigating drugs and firearms offenses. After considering Cameron's testimony and reviewing the state search warrant, the magistrate judge issued a memorandum and recommendations ("M&R") on August 5, 2025. (*See* ECF No. 76.) The magistrate judge doubts the sufficiency of the state search warrant with respect to probable cause but ultimately assumes without deciding that the warrant is defective on that ground. He nevertheless recommends denying Dove's suppression motion on the basis that Cameron acted in good faith, thereby making the exclusionary rule inapplicable.

Dove timely objected to five parts of the magistrate judge's M&R. First, he takes issue with the magistrate judge's application of the good faith exception. Second, he objects to the magistrate judge's decision not to reach a concrete conclusion on the validity of the state search warrant. Third, he disputes that a detached and neutral magistrate issued the state search warrant. Fourth, he objects to the magistrate judge's "finding that even if the search of . . . Dove's phone exceeded the scope permitted by the state search warrant, that blanket suppression is not the appropriate remedy." (ECF No. 83, at 2.) Fifth, he objects to certain factual findings of the magistrate judge and challenges the credibility determination afforded to Cameron.[3]

## II. STANDARD OF REVIEW

"A district judge may refer to a magistrate judge for recommendation a defendant's motion . . . to suppress evidence." Fed. R. Crim. P. 59(b). A party has fourteen days to object to a

---

[3] Specifically, Dove contends that documentary evidence presented to Cameron at the hearing showed that his true intent in securing the search warrant was to further his investigation into Dove for car thefts, not firearms and narcotics offenses.

magistrate judge's findings and recommendations. 18 U.S.C. § 636(b)(1). If a party objects, the district judge must "make a de novo determination *of those portions* of the [magistrate judge's] report or . . . recommendations to which objection is made." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (alteration in original) (quoting 28 U.S.C. § 636(b)(1)). In other words, the district court must consider those portions to which the party objected as if the magistrate judge had not ruled on such matters at all. *See Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 246 (4th Cir. 2009).

## III. DISCUSSION

The Fourth Amendment protects against unreasonable searches. U.S. Const. amend. IV. "The Fourth Amendment's reasonableness clause 'generally requires the obtaining of a judicial warrant' before law enforcement officers undertake a search." *United States v. Davis*, 94 F.4th 310, 316 (4th Cir. 2024). "A warrant must be supported by probable cause," *id.*, and "particularly describe[e] the place to be searched, and the persons or things to be seized," *United States v. Blakeney*, 949 F.2d 851, 861 (4th Cir. 2020) (alteration in original) (quoting U.S. Const. amend. IV). Courts generally may suppress evidence obtained pursuant to a defective warrant, though they should refrain from doing so if the police acted in good faith in securing the warrant. *See United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011). Courts also may suppress evidence indirectly obtained from a defective warrant, known as "fruit of the poisonous tree," so long as no exceptions to the Fourth Amendment's exclusionary rule apply. *See Utah v. Strieff*, 579 U.S. 232, 237–38 (2016).

The affidavit in support of the state search warrant was so lacking in indicia of probable cause, and the warrant consequently was so facially deficient, that Cameron could not reasonably believe in its validity. Accordingly, the state search warrant fails for lack of probable cause and

7

particularity, and the good faith exception cannot thwart suppression of all evidence obtained from the state search warrant. The Court will not suppress evidence obtained pursuant to the federal search warrant, however, as federal investigators sufficiently established probable cause to search the June 29 phone on grounds independent from Cameron's unconstitutional search. The Court, therefore, will partially adopt the magistrate judge's recommendation, albeit on different grounds, and grant in part and deny in part Dove's suppression motion.

### A. *State Search Warrant*

#### 1. *Probable Cause*

When the police apply for a warrant, a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Davis*, 94 F.4th at 316 (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The supporting affidavit "need only supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus." *United States v. Orozco*, 41 F.4th 403, 410 (4th Cir. 2022). "Reviewing courts should afford a magistrate's determination of probable cause 'great deference, declining to defer only when the finding was not supported by substantial evidence in the record or when the basis of the determination was a knowingly or recklessly false affidavit.'" *Id.* (quoting *United States v. McLamb*, 220 F. Supp. 3d 663, 669 (E.D. Va. 2016)).

Citing to *Davis* and *Orozco*, the government asserts that drug traffickers often use cell phones to coordinate with their suppliers and buyers. *See Davis*, 94 F.4th at 320; *Orozco*, 41 F.4th at 411 n.9. Of this, the Court has no doubt. But the search warrant and supporting affidavit here

8

stand in stark contrast to those in *Davis* and *Orozco*. *Davis*, a firearms case, primarily concerned whether police lawfully seized a phone, rather than searched it. *See* 94 F.4th at 318–21. And, upon seizing that phone, the police obtained a search warrant based on a supporting affidavit that presented in great detail the affiant's experience investigating firearms offenses and evidence directly linking the defendant's phone to the offense charged. *See* Joint Appendix, *United States v. Davis*, No. 22-4088, at 85–86, 89–92 (4th Cir. May 17, 2022), ECF No. 24. As for *Orozco*, the defendant there challenged the validity of a search warrant on the ground that the supporting affidavit spoke only in "generalities of where *ordinary* drug traffickers *ordinarily* keep drug-trafficking evidence." 41 F.4th at 411. The Fourth Circuit rejected this argument, however, as the affidavit noted the defendant's use of a navigation application on his phone to transport drug money. *See id.* at 410–11. Because the police had presented "evidence that *this* suspected drug trafficker had evidence of *this* drug-trafficking crime . . . on his phone," they had "supplied a substantial basis for finding probable cause to search the phone." *Id.* at 411.

The state search warrant here, in contrast, wholly fails to establish "some nexus between the suspected crime and the place to be searched." *Id.* at 409. Although the affidavit in support of the state search warrant described in detail the conduct giving rise to Dove's arrest for narcotics and firearms offenses, it never set forth Cameron's reasons for why he thought the May 8 phone contained evidence of these crimes. Instead, Cameron stated nothing more than his conclusory "belie[f]" that Dove used the May 8 phone to carry out the charged offenses. (ECF No. 64 ¶ 12.) Such a "hunch" cannot even give rise to reasonable suspicion, let alone probable cause. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). Moreover, Cameron spoke only in generalities about how information on a cell phone "can be evidence in a law enforcement investigation." (ECF No. 64-2 ¶ 13.) The affidavit never tied this broad statement to drug trafficking or firearms offenses. It

9

never discussed Cameron's experience investigating such crimes. And most glaringly, it never even hinted at a connection between Dove's conduct and the May 8 phone. Without establishing any nexus, the state search warrant fails for lack of probable cause.

### 2. *Particularity*

"[T]he Fourth Amendment 'does not set forth some general particularity requirement.'" *United States v. Cobb*, 970 F.3d 319, 326–27 (4th Cir. 2020) (quoting *United States v. Grubbs*, 547 U.S. 90, 97 (2006)) (internal quotation marks omitted). So long as probable cause exists "to believe that contraband or evidence of a crime will be found in a particular place, . . . the Fourth Amendment specifies only two matters that must be particularly described in the warrant: the place to be searched and the persons or things to be seized." *Id.* at 327 (internal quotation marks and citations omitted). Police satisfy the particularity requirement "when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).

The Court has little concern that the state search warrant describes with sufficient particularity the applications and programs on the May 8 phone to be searched. But since the warrant identifies no relation between the May 8 phone and Dove's crimes, it fails to satisfy the Fourth Amendment's particularity requirement. *Id.*; *see supra* Section III.A.1.

### 3. *Good Faith Exception*

Under the good faith exception to the Fourth Amendment's exclusionary rule, courts should not suppress evidence obtained pursuant to a defective warrant "unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's

authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The "good faith" exception applies in four instances:

> (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

*Wellman*, 663 F.3d at 228–29. "When considering the application of the good faith exception, courts 'should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable.'" *United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011) (quoting *United States v. Legg*, 18 F.3d 240, 244 n.1 (4th Cir. 1994)).

As noted, Cameron's affidavit drew no connection whatsoever between Dove's offenses and the May 8 phone. *Supra* Section III.A.1. Instead, it included only Cameron's conclusory belief that Dove used the May 8 phone to carry out his crimes. *Id.* Any reasonable officer would know that such bare bones information cannot sufficiently give rise to reasonable suspicion, let alone probable cause. *See Sokolow*, 490 U.S. at 7; *see also Pritchett v. Alford*, 973 F.2d 307, 315 (4th Cir. 1992) ("[A] reasonably competent police officer should know the law governing his conduct." (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982))). Thus, the affidavit was "so lacking in indicia of probable cause," and the warrant consequently was "so facially deficient," that Cameron could not reasonably have believed in the warrant's validity. *Wellman*, 663 F.3d at

11

228–29. The good faith exception cannot take hold, and the Court must suppress any evidence obtained pursuant to the state search warrant.[4]

### B. Federal Search Warrant

Dove further asks the Court to suppress all evidence obtained pursuant to the federal search warrant as fruit of the poisonous tree. Courts may, but should not automatically, suppress evidence derivatively obtained from a Fourth Amendment violation. *See United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). "[T]he critical inquiry is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). For example, "under the 'independent source' doctrine, when the police discover a particular fact by illegal means but later acquire knowledge of the same fact by independent, legitimate means, evidence of that fact is not excludable as fruit of the police misconduct." *United States v. Mowatt*, 513 F.3d 395, 404 (4th Cir. 2008), *abrogated on other grounds by*, *Kentucky v. King*, 563 U.S. 452 (2011).

The independent grounds by which federal investigators obtained the federal search warrant dissipate the taint of Cameron's unconstitutional search. Although Adam's supporting affidavit refers to evidence illegally obtained from the May 8 phone, her investigation into Dove originated from an entirely separate matter: his possible involvement in the robbery of a mail carrier. This investigation began not because of any information Adams received from Cameron. Rather, it started when Adams independently discovered an Instagram video that Dove posted, which showed him driving a car matching the description of that used in robbery. Then, upon

---

[4] Because the Court will suppress all evidence obtained pursuant to the state search warrant for lack of probable cause and particularity, it need not address Dove's separate argument that Cameron's search exceeded the scope of the warrant.

learning of Dove's narcotics and firearms offenses, federal investigators properly obtained a federal warrant to arrest him.[5] When executing the arrest warrant, the investigators discovered the June 29 phone in a toilet bowl with its screen smashed. Dove later waived his *Miranda* rights and admitted that the June 29 phone belonged to him. He then explained that he had bought the car in the Instagram video from another individual and that communications on the June 29 phone could verify as much. Based on these facts, Adams asserted that probable cause existed to search the June 29 phone for evidence related to the robbery.

None of these events arise from Cameron's illegal search of the May 8 phone. Instead, Adams properly established probable cause to search the June 29 phone based on circumstances entirely independent of Cameron's unconstitutional search of the May 8 phone. *See Davis*, 94 F.4th at 317 (search valid where probable cause existed to believe that police would find evidence of at least one offense); *see generally* Cobb, 970 F.3d at 330–31 (where warrant is only partially invalid, evidence obtained pursuant to valid portion remains admissible). Because federal investigators validly searched the June 29 phone, the Court will not suppress any evidence obtained pursuant to the federal search warrant as fruit of the poisonous tree.[6]

---

[5] Even setting the evidence from the May 8 phone aside, federal investigators unquestionably had probable cause to arrest Dove on these charges, as CMPD detectives found a gun on Dove's person and fentanyl pills on the precise seat of the car in which Dove had been sitting just minutes before state arrest on May 8, 2023.

[6] Adams also sought to search the June 29 phone for evidence of fraud. Unlike her robbery investigation, Adams predicated her assertion of probable cause with respect to the fraud investigation in part on texts obtained from the May 8 phone. To be sure, Dove admitted to Adams after waiving his *Miranda* rights that he had used Instagram, a social media application commonly used on one's cell phone, to try to commit fraud. While such an admission ordinarily would suffice to establish probable cause, nothing in Adams's supporting affidavit shows that she would have even known to ask Dove about his attempted fraud scheme had Cameron not previously shared the texts from the May 8 phone with her. Thus, Adam's presentation of probable cause with respect to the robbery investigation provides the sole basis for dissipating any taint of Cameron's unconstitutional search.

## IV. CONCLUSION

For the foregoing reasons, the Court will adopt in part and reject in part the magistrate judge's recommendation, albeit on different grounds than those provided in the M&R. The Court will grant Dove's suppression motion as to evidence obtained pursuant to the state search warrant, but will deny his suppression motion as to evidence obtained pursuant to the federal search warrant.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 22 August 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

UNITED STATES OF AMERICA

v.    Criminal Action No. 3:23cr151

SHAMEL MALIK DOVE,
        Defendant.

### ORDER

This matter comes before the Court on a Memorandum & Report ("M&R") filed by United States Magistrate Judge David C. Keesler, (ECF No. 76), in response to a motion to suppress filed by the defendant, Shamel Malik Dove, (ECF No. 64). For the reasons stated in the accompanying Opinion, the Court ADOPTS IN PART and REJECTS IN PART the recommendations contained in the M&R, albeit on different grounds. (ECF No. 76.) Accordingly, the Court GRANTS IN PART and DENIES IN PART Dove's suppression motion. (ECF No. 64.) The Court will suppress any evidence obtained pursuant to a state search warrant requested by Detective James Cameron of the Charlotte Mecklenburg Police Department on May 17, 2023, but it will not suppress any evidence obtained pursuant to a federal search warrant requested by United States Postal Inspector Jessica Adams on July 14, 2023.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record and to Judge Keesler.

Date: 22 August 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge